**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

JEFFREY BRILL
11932 West Long Circle
Littleton, CO 80127,

          *Plaintiff*,

                        CASE NUMBER 15-CV-300

vs.


TRANS UNION LLC
c/o The Prentice-Hall Corporation System, Inc.
8040 Excelsior Drive, Suite 400
Madison, WI 53717,

          *Defendant*.

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO TRANS UNION'S
MOTION TO DISMISS**

---

## I. INTRODUCTION.

Plaintiff Jeffrey Brill (Brill) sued defendant Trans Union LLC (TransUnion) because it failed to properly investigate and to properly re-investigate Brill's complaint that TransUnion was reporting inaccurate information about an alleged account he was reported to have with Toyota Motor Credit Corporation (Toyota). Based on TransUnion's inadequate investigation, it continued to report inaccurate information regarding Brill's account with Toyota.

Brill provided TransUnion very specific information that proved the information TransUnion was reporting was inaccurate. Brill provided TransUnion very specific information that proved that Toyota was not a reliable reporter of information regarding the account. TransUnion failed to correct the inaccurate information.

TransUnion's failures caused damages to Brill. TransUnion's failures violated the Fair Credit Reporting Act.

TransUnion has moved to dismiss the Plaintiff's Amended Complaint pursuant to F.R.C.P. 12(b)(6), alleging that Brill's complaint fails to state a claim upon which relief can be granted. Plaintiff's motion is not well-founded and must be denied.

First, defendant fails to properly articulate the law and methodology regarding consideration of motions to dismiss. Defendant fails to recognize that the court must accept plaintiff's well pleaded allegations as true, for purposes of a motion to dismiss. This failure results in defendant's brief ignoring the key facts that must be accepted as true for purposes of the court's analysis and decision. This failure further results in defendant's entire brief as being largely beside the mark because it refutes successfully only the "straw man (person)" argument it sets up, not the actual facts in the complaint filed by plaintiff. It successfully defeats only claims it says the plaintiff is making, not the actual claims the plaintiff is making.

Second, defendant ignores well pleaded facts that support plaintiff's claim. Defendant completely mischaracterizes the well-pleaded allegations of the Amended Complaint. It is only be ignoring the detailed Amended Complaint that defendant's argument can be put forward.

Third, defendant mischaracterizes Seventh Circuit law which it claims to be controlling, in its attempt to have the complaint dismissed. These mischaracterizations are numerous and egregious, as will be detailed below.

This brief will assist the Court in reaching its decision to deny the defendant's motion to dismiss. It will first accurately state the law regarding motions to dismiss for allegedly failing to state a claim for relief. Second, the brief will analyze the actual facts plead in the Amended Complaint to show how they effectively establish plaintiff's claim. Third, this brief will accurately analyze the applicable law to show that defendant's motion not only defeats **only** its own "straw person" which bears no resemblance to plaintiff's actual claim, but also inaccurately characterizes the state of the applicable law. In conclusion, it will be easy to see that defendant's motion must be denied.

## II. THE APPLICABLE LAW REGARDING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM.

A very recent and succinct statement of the applicable law on motions to dismiss under F.R.C.P. 12(b)(6) is found in Fletcher v. Hoeppner Wagner & Evans, LLP, 2015 WL 1825614, at 1 (N.D. Ind. Apr. 22, 2015), citing undisputed Seventh Circuit law, as follows:

> *"In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir.2002); Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir.1991)."*

Further, even the very recent case cited in defendant's brief, Perkins v. Lew, No. 14-CV-388-WMC, 2015 WL 1458088, at 2 (W.D. Wis. Mar. 30, 2015) does not avail the defendant in a true critique of the Amended Complaint. While it is true the plaintiff is not entitled to rely on legal conclusions stated in the complaint, the court must *"draw all reasonable inferences and facts in favor of the nonmovant."* Perkins, supra, at 2.

As will be seen herein, plaintiff is relying on facts (and any necessary reasonable inferences therefrom) not legal conclusions or threadbare recitals of elements of a cause of action.

To the extent there can be said to be any relatively recent refinement of the law on motions to dismiss, it extends to the requirement that the complaint must state a claim for relief that is plausible on its face.

> *"This is the light in which the Court's references in Twombly, repeated in Iqbal, to the pleader's responsibility to 'state a claim to relief that is plausible on its face' must be understood. See Twombly, 550 U.S. at 570, 127 S.Ct. 1955; Iqbal, 129 S.Ct. at 1949. 'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. Indeed, the Court expressly distanced itself from the*

Page **3** of **17**

**Plaintiff Jeffrey Brill's Brief**
**in Opposition to Defendant's Motion to Dismiss**

> *latter approach in Iqbal, 'the plausibility standard is not akin to a probability requirement.' 129 S.Ct. at 1949 (quotation marks omitted). As we understand it, the Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, not did they happen."* Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010)

As will be shown herein, the Amended Complaint more than meets the applicable "plausibility" standard. Although not required, the allegations in the complaint, if assumed true (which they must for purposes of the instant motion) meet if not the "beyond a reasonable doubt" standard, certainly the "more likely than not" standard.

> *"A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. Beam v. IPCO Corp., 838 F.2d 242, 244 (7th Cir.1988)."* Venture Associates Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 432 (7th Cir. 1993).

## III. THE FACTS STATED IN THE COMPLAINT DEMONSTRATE THAT PLAINTIFF HAS A VALID CLAIM UNDER THE FAIR CREDIT REPORTING ACT.

The applicable facts alleged in the Amended Complaint are stated in paragraphs 1 through 20, paragraphs 35 through 37, ¶¶40-46, ¶48, ¶52, ¶54, ¶62, ¶¶63-67 regarding damages, and ¶¶68-69. These paragraphs are identified specifically to make it clear that plaintiff is not relying impermissibly on legal conclusions.

However, it should be noted that such conclusions are useful in complaints because they meet the Rule 8 requirement of giving "*fair notice*". "*The primary purpose of [Rule 8] is rooted in fair notice:*" Carter v. Huibregtse, 2009 WL 3415817, at pg. 1 (W.D. Wis. Oct. 20, 2009). For example, paragraph 21 of the amended complaint may be characterized as a legal conclusion, but it is also a summary of the facts stated earlier in the complaint, and the paragraph provides notice to TransUnion

that plaintiff's claim is that the facts previously plead prove that TransUnion's reinvestigation was deficient.

What are the facts and what story do they tell? Brill and Kelly A. Pfeifer jointly leased a vehicle that was financed by a lease with Toyota. (¶¶1-5). The lease was for 36 months and terminated May 3, 2012. (¶5). Brill did not sign any documents to extend the lease. (¶6). Brill's relationship with Toyota ended as of May 3, 2012. (¶6). Although he tried, Brill has not obtained any documents to explain the relationship between Toyota and Pfeifer for the time between May 2012 and May 2013. (¶¶9-12). Brill did obtain a document that purported to extend the lease agreement for the period from May 2013 and the next six months. (¶13). The extension document purported to contain his signature. (¶16). It did not and was a forgery. (¶¶ 17-19).

Brill informed Toyota and TransUnion that he did not sign any documents extending his obligations beyond the date of the original lease termination. (¶14). Brill repeatedly informed both Toyota and TransUnion that the purported signature was a forgery. (¶19).

Brill informed TransUnion that the information they were reporting about his relationship with Toyota was internally inaccurate. (¶35). Specifically, Brill informed TransUnion that it was reporting his account with Toyota as a 36 month account opened in May 2009, but it was reporting past due payments almost five years after the account was opened. (¶¶ 36-37). Brill provided TransUnion with at least four points of handwriting analysis of his signature that were sufficient to alert TransUnion to the fact that Brill was correct in asserting that his signature was forged. (¶46). TransUnion also falsely reported that Brill had a credit relationship in which Toyota charged off $8,795 as a bad debt. (¶68). TransUnion falsely reported that Toyota resolved the customer dispute. (¶69). From these facts, the logical inference is that, as alleged in paragraph 38, that "*a reasonable reinvestigation, as required by law, would require more than an automated consumer dispute verification.*"[1]

---

[1] Plaintiff is willing to have the court assume, for purposes of this motion, that TransUnion did in fact initiate an automated consumer dispute verfication (ACDV) with Toyota in response to his request for reinvestigation, and did nothing more, despite the fact that there is no proof in the current record that even that was done.

Page **5** of **17**

**Plaintiff Jeffrey Brill's Brief
in Opposition to Defendant's Motion to Dismiss**

## IV. DEFENDANT'S ARGUMENT REGARDING BAGBY AND HANDWRITING ANALYSIS IS A "STRAW MAN".

Defendant seriously mischaracterizes many aspects of both the cases it cites and plaintiff's claim. As a result, it engages in the logical fallacy of diversion, also known as the "straw man" fallacy.

First defendant's argument section of its brief (starting at page 4) incorrectly posits that the issue at hand is whether or not TransUnion is *"required to conduct a handwriting analysis to resolve a consumer's dispute that account activity may be the result of fraud."* But that is almost a complete mischaracterization of plaintiff's complaint.

Rather, plaintiff alleges that *"TransUnion violated its obligations under 15 U.S.C. §1681i to promptly reinvestigate Brill's dispute of the accuracy of the information it was providing regarding him when it was informed in writing in May 2014 that it was providing inaccurate information."* Amended Complaint, ¶62.

> *"Section 1681i(a) requires a consumer reporting agency to reinvestigate the completeness or accuracy of any item of information contained in a consumer's file if the agency receives notice from the consumer that he is disputing the item."* Anderson v. Trans Union LLC, 367 F. Supp. 2d 1225, 1232 (W.D. Wis. 2005).

The reasonableness or lack thereof of a consumer reporting agency's reinvestigation depends almost entirely on the specific facts regarding the complaint presented to it, and the facts of which it is made aware by the consumer's complaint, including whether the consumer provided the consumer reporting agency (CRA) information that indicates the reporter of information to it regarding the consumer's complaint may be unreliable.

> *"The rule of law to be taken from these cases is that agencies have a duty to investigate the accuracy of the information provided by the creditor when the consumer gives the agency a specific reason for doing so. Henson, 29 F.3d at 287 (credit reporting agency may have*

**Plaintiff Jeffrey Brill's Brief**
**in Opposition to Defendant's Motion to Dismiss**

> *duty 'to go beyond the original source' if 'consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable')."* <u>Scheel-Baggs v. Bank of Am.</u>, 575 F. Supp. 2d 1031, at 1042 (W.D. Wis. 2008).

To claim that this court or the Seventh Circuit has weighed in on the matter in dispute here is disingenuous at best. The argument is made by defendant by selectively quoting from cases out of context and without regard to the differences in the facts or procedural status of those cases to the facts and procedural status of the case in question.

For example, plaintiff and defendant both quote from <u>Anderson v. Trans Union,</u> supra. But the case can only really support one side. Who is right?

Both the facts and procedural posture of <u>Anderson</u> differ significantly from the instant case. <u>Anderson</u> was a case that was decided on a motion for summary judgment, so the plaintiff was not entitled to have all facts assumed true for purposes of the motion. The <u>Anderson</u> court found that the plaintiffs in that case *"have not shown that defendant had cause to believe that the bank was an unreliable source that could not be relied upon for an accurate report of its own cardholders."* Anderson, supra at 1233.

But here plaintiff has pleaded specific facts, as noted above, that must be held to show (as they have to be assumed true for purpose of the motion) that TransUnion was notified that Toyota was an unreliable reporter in this case, and that more than sending an ACDV form was required for the reinvestigation to be held to be reasonable. See Amended Complaint, (¶¶ 35-38).

Neither <u>Anderson</u> nor the other cases cited by defendant on page 5 of its brief stand for the proposition it posits, i.e., that *"when the authenticity of a document is disputed, a CRA is entitled to rely on the furnisher of information"* as a flat *"rule of law"*. No such rule exists, and defendant knows that.

**Plaintiff Jeffrey Brill's Brief
in Opposition to Defendant's Motion to Dismiss**

How do we know both that the rule does not exist, and that defendant knows that? We know because the below quote from the case **defendant** cited demonstrates the first proposition, and we know defendant knows, precisely because defendant cited the case.

> *" ..... plaintiffs cite cases in which courts have held that reinvestigations are inadequate if they merely shift the burden back to the consumer and the credit grantor or do not show that the actions the agency has taken are adequate under the circumstances. E.g., Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir.1997) (when consumer reported possibility that someone had obtained credit cards in her name and was using them fraudulently, statute required more of consumer reporting agency than simply confirming with card issuers that cards had been issued in consumer's name); Henson v. CSC Credit Services, 29 F.3d 280, 286 (7th Cir.1994) (holding that after consumer reporting agency receives notice that report of judgment against consumer may be inaccurate, it has duty to look beyond reporting of judgment, although it has no such duty prior to receipt of notice); Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir.1993) (upholding jury finding that consumer reporting agency violated §1681i when it relied solely on Consumer Dispute Verification forms in conducting investigation despite large number of disputed accounts and allegations of fraud). Plaintiffs rely on these cases in arguing that the reasonableness of a particular § 1681i investigation is usually a question that must be left to the jury to determine.*
>
> *"The cases plaintiff cites recognize the possibility that reinvestigations need to go beyond the original source in certain situations. In Cushman, it was not enough for the defendant to find out that the cards had been issued; the consumers were not complaining that the cards had not been issued but that their cards were being used fraudulently. In Henson, it was not enough to check the court record; the complaint was that the record was inaccurate. In Stevenson, it was not enough to rely on the usual reinvestigation procedures when the complaint concerned fraud and there were many disputed accounts.*

Page **8** of **17**

**Plaintiff Jeffrey Brill's Brief
in Opposition to Defendant's Motion to Dismiss**

> *In plaintiffs' case, however, the question is simply whether the plaintiffs are alive. This is something that the credit card issuer (Cross Country Bank) can be depended upon to verify; it has the means of checking its cardholders' status and it certainly has the motivation to do so. If someone is using credit cards of a person who is deceased, who has a stronger reason to check the legitimacy of such use but the issuer who may be held liable for any fraudulent charges?"* Anderson v. Trans Union LLC, 367 F. Supp. 2d 1225, 1232-33 (W.D. Wis. 2005).

So we know that in cases where the issue is whether the holder of a credit card is dead, that simply notifying the issuer of the card of the claim of death, and relying on the issuer's response, is a sufficient reinvestigation. We also know that in the Anderson case alone, this court cited three cases, including a Seventh Circuit case, that all held that there are situations were an automated response, relying on the credit issuer, or relying on the face of information was insufficient.

Then defendant goes on to mischaracterize the amended complaint stating,

> *"Here, Plaintiff's only claim is that Trans Union should have updated its reporting of the Account, based on a handwriting analysis of documents provided to Trans Union by Plaintiff. See Amended Complaint ¶¶ 21-22, 29-31, 40-48. Although Plaintiff now admits that Trans Union is not required to conduct handwriting analyses to verify the information it reports, Plaintiff claims that this case should be the exception, because Plaintiff provided Trans Union with a layman's opinion (i.e. the opinion of Plaintiff's counsel) that the signature on the 2013 Extension was a forgery."* Defendant's brief, pages 5-6.

But this is a canard that defendant posits as its straw man. Plaintiff's claim is not that Trans Union should have updated its reporting based on "*handwriting analysis*". Plaintiff's claim is that Trans Union should have reasonably reinvestigated his complaint, and reasonably considered all the information he provided, as it is required to do both under Section 1681i(a)(1) and(a)(4), so it would stop reporting inaccurate information about his account.

Nor did plaintiff anywhere admit that a CRA is not required to conduct handwriting analyses, as defendant claims. In paragraph 47 of the amended complaint plaintiff stated, *"While credit reporting agencies may not be required to analyze handwriting in every case of a claimed forgery, in this case, because of the specific information provided by Brill, TransUnion had to take reasonable steps to determine the issue of forgery or identity theft to which Brill had alerted TransUnion."*

This was neither an admission that a handwriting analysis by a CRA is never required (to be discussed further below), nor a claim that such an analysis was required in this case. In fact, plaintiff has always contended that the fact of forgery could be easily determined by a simple examination of the relevant documents that plaintiff provided to defendant, coupled with the points of analysis provided. See Amended Complaint, paragraph 46. It is this failure to analyze and consider the information provided by plaintiff and to thus remove the inaccuracy from his credit report that is the valid basis of his claim.

Defendant apparently wants to establish a *"bright line"* rule that when forgery or identity theft is reported by a consumer, the fact that a handwriting analysis might shed some light on the truth of the allegation, but would require the CRA to incur significant costs, means that the CRA never has to do more than rely on the information provided by the credit account reporter. This is not the law in the Seventh Circuit or anywhere else, although defendant incorrectly claims this is the holding of Bagby v. Experian Info. Solutions, Inc., 162 F. Appx. 600, (7th Cir. 2006).

As will be seen, defendant's argument about Bagby is a "straw man" argument, and in addition, defendant completely mischaracterizes both the holding and reasoning of Bagby.

*Bagby's* facts differs significantly from the facts of this case, and *Bagby's* result is limited to the facts before the *Bagby* court. In *Bagby,* the dispute was over the reporting of a Discover card account that Bagby's mother had opened in her name for her use in college. She used the account, as did her mother, for a period of over six years. The account was never reported as negative, because payments were made on the account satisfactorily for the entire time it existed.

Page **10** of **17**

**Plaintiff Jeffrey Brill's Brief
in Opposition to Defendant's Motion to Dismiss**

> *"Although Experian conducted no further investigation beyond sending out the CDVs, we agree with the district court that its standard reinvestigation procedure was sufficient to satisfy its obligations **under these circumstances**."* (Emphasis added.) <u>Bagby v. Experian Info. Solutions, Inc.</u>, 162 F. App. 600, 607 (7th Cir. 2006).

Bagby appealed a grant of summary judgment in favor of the CRA, so findings were made by the district court for purposes of that motion. One of the significant facts found, as noted by the appellate court, was that there was no evidence that the credit grantors were unreliable sources.

> *"Given Bagby's failure to present evidence that Sears or Discover were unreliable sources, this is not a circumstance where a more in-depth investigation by Experian was warranted. But see Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir.1997) (finding that additional investigation by credit reporting agency was warranted after consumer alerted agency to unreliability of source); Stevenson v. TRW Inc., 987 F.2d 288 (5th Cir.1993) (same)."* <u>Bagby v. Experian Info. Solutions, Inc.</u>, 162 F. App'x 600, 606 (7th Cir. 2006).

Therefore, to the extent it can be said that the Seventh Circuit has weighed in on the issue at all, it can be said to have concluded that, if there is no evidence that the source of information is unreliable, an automated response may be all that is required. Further, this conclusion was reached by applying the two *Henson* factors, the first of which is whether the CRA has been alerted to the possibility that the reporting source is unreliable. The second prong, dependent in part on the first, is whether the cost of verifying the accuracy of the information is justified in light of the harm possibly caused by reporting information inaccurately.

But this is where we see that the alleged **holding** of Bagby, inapplicable as it may be to the facts of the instant case, is not a holding at all, but rather dictum. Beyond the fact that to the extent it were a holding, it was a holding that no handwriting analysis (or any further investigation at all) was required, it was because it was not required on the facts of *Bagby*, not because it was a rule of general application.

We know that this portion of the case was dictum because the court had already found that Bagby had no case, because she had no damages.

**Plaintiff Jeffrey Brill's Brief**
**in Opposition to Defendant's Motion to Dismiss**

> *"As we have just discussed, Bagby has not established that she suffered actual damages……Although we have determined that Bagby failed to demonstrate that she was damaged by Experian's conduct, we briefly address the reasonableness of Experian's reinvestigation into Bagby's claims."* Bagby v. Experian Info. Solutions, Inc., 162 F. App'x 600, 605 and 606 (7th Cir. 2006)

The case was already over before the discussion of the *Henson* factors in dictum lead to the rejection of Bagby's contention (apparently stated for the first time in oral argument) that the CRA should have conducted a handwriting analysis, because the court had concluded she had no damages.

> *"A dictum is 'any statement made by a court for use in argument, illustration, analogy or suggestion. It is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication.' Stover v. Stover, 60 Md.App. 470,476, 483 A.2d 783,786 (1984). It is 'a statement not addressed to the question before the court or necessary for its decision.' American Family Mutual Ins. Co. v. Shannon, 120 Wis.2d 560, 565, 356 N.W.2d 175, 178 (1984)."* United States v. Crawley, 837 F.2d 291, 292-93 (7th Cir. 1988).

Nevertheless, we need not be concerned with whether defendant is citing a holding or dictum from *Bagby*, except to understand the extent to which defendant is willing to misrepresent the facts or state of the law to advance its motion to dismiss. Instead we can see that the Seventh Circuit holds strongly to the line of cases, including *Henson v. CSC Credit Services, supra,* which contain a two pronged inquiry into the reasonableness of a reinvestigation; consisting of one, whether there is an indication of the lack of reliability of the reporter, and two, a weighing of the cost of potential additional inquiry versus the potential harm.

To suggest that a case where this (the *Henson*) inquiry was conducted as dictum after a holding that there were no damages, dictates the result of the instant case is a combination of wishful thinking and sophistry. We know TransUnion had substantial reasons to believe the information they had from Toyota was unreliable. Amended Complaint, ¶¶35-37, 46 and 68-69. We know that Jeffrey Brill suffered

**Plaintiff Jeffrey Brill's Brief
in Opposition to Defendant's Motion to Dismiss**

substantial damages in this case. Amended Complaint, ¶¶63-67. In that light, since we know that TransUnion did nothing but send an ACDV, we know that they did not reasonably reinvestigate Jeffrey Brill's dispute.

A more useful case for concluding this analysis in favor of plaintiff, presented honestly to this court as persuasive precedent, is the well-reasoned analysis of a district court in Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, (D.N.M. 2006). This case is more informative for the court than the cases cited by defendant, because, as here, it involves a consumer who was harmed by an inaccurate credit report that involved issues of identity theft or confusion.

First, we can start with the court's disposition of the "straw man" argument made by Equifax in the Apodaca case. It is instructive because of the similar "straw man" argument TransUnion has constructed in this case. By "*minimizing or distorting*" plaintiff's claims into a claim about handwriting analysis, TransUnion claims to have authority to defeat the straw man.

> *"I reject this argument because it employs the fallacy of diversion, also known as the "straw man" fallacy. See Edward Damer, Attacking Faulty Reasoning 157 (3d ed.1995). Under this fallacy, Equifax avoids disputed factual issues by minimizing or distorting Plaintiff's claim for punitive damages so that it is limited to a facial attack on the legality of the company's "partial matching logic" and the CDV procedure. Having minimized or distorted Plaintiff's claim in this manner, Equifax then proceeds to refute it by showing that the use of partial matching logic and the CDV procedure is not illegal per se in every case."* Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, 1229 (D.N.M. 2006)

> *"In deciding similar claims, courts have reasoned that such 'exclusive reliance' on furnishers of credit information and standardized procedures such as partial matching logic 'may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his [or her] credit report.' Henson v. CSC Credit Servs., 29 F.3d 280, 286 (7th Cir.1994); accord Cushman, 115 F.3d at 224–25; Johnson v. MBNA America Bank, NA, 357 F.3d 426, 432 (4th Cir.2004). 'When a credit reporting agency receives such*

**Plaintiff Jeffrey Brill's Brief
in Opposition to Defendant's Motion to Dismiss**

> *notice, it can target its resources in a more efficient manner and conduct a more thorough investigation.' Henson, 29 F.3d at 286–87. In such situations, '[i]t would make little sense to conclude that, in creating a system intended to give consumers a means to dispute— and, ultimately, correct—inaccurate information on their credit reports, Congress used the term 'investigation' to include [only] superficial ... inquiries by creditors' that "do not look beyond the [automated] information" in their own computer systems and 'never consult underlying documents such as account applications' and the like. Johnson, 357 F.3d at 430–31."* Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006).

So this is really the key factual and policy dispute raised by this case. Brill contends that the law requires TransUnion to make an actual reasonable reinvestigation of the claim that he had an account with Toyota that extended beyond the original 36 month contract he signed, as that was information that TransUnion reported and the report was inaccurate. Here Brill was making a detailed report of forgery as to the six months from May 2013, and requesting more information about the year between May 2012 and May 2013.

Apparently TransUnion's contention is that they can report a forged account as legitimate as long as they want, as long as the original creditor responds in a standard manner to an ACDV form.

> *"Frankly, it is hard to see how a 'reasonable reinvestigation' of a dispute premised on identity theft can consist of merely asking the creditor to verify the identifying information on the consumer's account, because the very nature of such a dispute presumes that the creditor has the identifying information; that is not what the consumer is complaining about. What the consumer is complaining about is that the information was provided by a third party posing as him without his knowledge or authorization. There would seem to be no chance of 'reasonably reinvestigating' such a dispute through the method employed here and, so far as the record reveals, as a matter of course by Trans Union."* Cornock v. Trans Union LLC, 638 F. Supp. 2d 158, 167 (D.N.H. 2009)

Defendant's additional claim that there were no factual inaccuracies that could have been corrected by a reasonable investigation is divorced from reality and the further requirement that the facts plead must be viewed in the light most favorable to the plaintiff. So at this stage we know that Jeffrey Brill did not extend the Toyota account beyond 36 months but TransUnion reported the account well beyond the termination date. How are we to assume the investigation that wasn't done wouldn't have provided further proof of what Jeffrey Brill knows to be the truth?

> *"The nature of the inquiry, then, is predictive, not retrospective; it asks what could have happened if the defendant had conducted a reasonable reinvestigation, not what did happen as a result of whatever reinvestigation the defendant actually performed. As one court has observed, albeit in a slightly different context, '[t]he question is not whether [the defendant] knew it was reporting inaccurate information but whether it should have known this by conducting a reasonable investigation.' Scheel–Baggs v. Bank of Am., 575 F.Supp.2d 1031, 1040 (W.D.Wis.2008) (denying summary judgment to defendant on claim under 15 U.S.C. § 1681s–2(b), 'which requires furnishers of credit information to conduct an investigation when they receive notice of a dispute,' based on existence of arbitration decision denying disputed claim). Thus, the inaccuracy test—which, as DeAndrade holds, is an independent element of a § 611(a) violation, in addition to the lack of a reasonable reinvestigation—functions as a causation requirement, linking the defendant's failure to reinvestigate as required by the statute to the plaintiff's harm from the continued appearance of the disputed item in his credit report."* Cornock v. Trans Union LLC, 638 F. Supp. 2d 158, 165 (D.N.H. 2009).

Defendant's stubborn insistence that it need do no more than it did, that it is flatly entitled to rely on Toyota, is its own *ipsi dixit*, not an accurate statement of the law. Nor does defendant garner support from cases it cites that are completely distinguishable from the instant case. Even its prize case, *Bagby*, is well dealt with not only by this brief but by the learned judge in the *Apodaca* case.

**Plaintiff Jeffrey Brill's Brief
in Opposition to Defendant's Motion to Dismiss**

> *"But the evidence of record in this case, when viewed in the light most favorable to Plaintiff, contrasts sharply with the facts recited in Bagby and the other authorities cited by Equifax."* Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, 1231 (D.N.M. 2006)

> *"It is reasonable to infer that the information Equifax erroneously reported would be regarded as very negative by potential creditors and others who had occasion to review this information on Plaintiff's credit reports, and that this erroneous negative information appeared on Plaintiff's credit reports for a significant period of time. Accordingly, a rational factfinder could infer that the potential harm to Plaintiff caused by this inaccurately reported information was very high and weighed strongly in favor of investing the resources necessary to complete a more thorough investigation that goes beyond the minimal CDV procedure on which Equifax relied."* Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, 1231-32 (D.N.M. 2006).

We know that Jeffrey Brill suffered significant damages because of the inaccurately reported negative information on his credit record. We know he was denied credit terms for which he was otherwise qualified because of the negative report. We know that he had an account closed by a creditor because of the negative information. It cannot be denied that TransUnion knows the effect of the negative information, thus weighing heavily in favor of the need to conduct a more thorough investigation.

## V. CONCLUSION.

Defendant's motion to dismiss the complaint must be denied. Motions to dismiss complaints cannot be granted unless the facts in the complaint, viewed in the light most favorable to plaintiff, cannot tell a plausible story about why the plaintiff is entitled to relief. Brill's story is not only plausible but convincing.

TransUnion reported inaccurate information about an account he was alleged to have with Toyota. TransUnion's own reporting was internally inaccurate, and the inaccuracy was pointed out to TransUnion by Brill. TransUnion therefore had reason to believe that Toyota was not a reliable reporter and that further

investigation of his dispute was required to meet the standard of reasonable reinvestigation required by the FCRA.

In addition, Brill provided many points of information to help TransUnion conduct a real reinvestigation, and to further demonstrate that Toyota was not a reliable reporter. TransUnion knew or should have known that a standard automated investigation, by its very nature, would not uncover the forgery or identity theft Brill knew had been committed.

TransUnion's report was inaccurate. The inaccuracy could have been corrected had TransUnion reasonably reinvestigated the matter in response to Brill's complaint.

TransUnion makes "*straw man*" arguments that claim the case is about handwriting analysis. These straw man arguments were revealed and refuted. TransUnion makes many assertions of facts, but those assertions are unsupported and not allowed by the requirement that the facts as alleged by plaintiff must be assumed to be true, for purposes of the motion.

Brill has a well pleaded claim for relief under the Fair Credit Reporting Act. The motion to dismiss must be denied.

Respectfully submitted this 16th day of September , 2015.

_____
Joel Winnig
Attorney for Plaintiff Jeffrey Brill
Bar No. 1018627
455 South Junction Road, Suite 200
Madison, WI 53719
t: 608-829-2888
f: 608-829-2802