IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY BRILL,

                OPINION AND ORDER

        Plaintiff,

v.                                        15-cv-300-slc

TRANS UNION LLC,

        Defendant.

---

In this civil lawsuit for monetary and injunctive relief, plaintiff Jeffrey Brill alleges that defendant Trans Union, LLC violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, when it continued to report that Brill had defaulted on an automobile lease account with Toyota Motor Credit Corporation (TMCC) after Brill reported to Trans Union that the underlying debt reported by TMCC was based on a lease extension on which Brill's signature had been forged. Before the court is Trans Union's motion to dismiss Brill's amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Dkt. 13.

As discussed below, I find that Trans Union did not have a legal duty to do more to resolve Brill's report that someone had forged Brill's signature on TMCC's lease extension. Therefore, I am granting the motion to dismiss.

I have drawn the following facts from Brill's amended complaint (dkt. 12) and I assume these facts to be true for the purpose of deciding Trans Union's motion to dismiss. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff Jeffrey Brill is an adult resident of Colorado. Defendant Trans Union LLC is a limited liability company whose principal office is located in Chicago, Illinois.

On or about May 4, 2009, Brill and Kelly Pfeifer jointly leased a vehicle from the Smart Motors Toyota dealership in Madison, Wisconsin. Smart Motors immediately assigned this lease to Toyota Motor Credit Corporation (TMCC). The original lease term was 36 months, so the lease was scheduled to terminate on May 3, 2012. At some point before May 3, 2012, Brill lost contact with Pfeifer, who kept possession of the car. Unbeknownst to Brill, Pfeifer kept the vehicle after the original lease term expired on May 3, 2012. Brill did not sign any documents extending his lease obligations, but Trans Union continued to report Brill's credit relationship with TMCC after the expiration of the original lease term. Apparently, and unbeknownst to Brill, Pfeifer had extended the lease with Toyota in both her name *and* Brill's name for another year.[1]

Trying to figure out what had happened, Brill obtained from TMCC a copy of a lease extension dated May 2, 2013. This lease extension has a signature on it that purports to be Brill's signature. The signature is a forgery. Brill informed both TMCC and Trans Union of the forged signature. On May 20, 2014, Brill disputed the accuracy of his credit report with Trans Union. Brill informed Trans Union that his purported signature on the lease extension lacked his middle initial. Brill told Trans Union that he always signed his name using the middle initial "D," even in places where his name was not typed with the middle initial. Brill also provided Trans Union with "at least four points of handwriting analysis of his signature." Dkt. 12 at ¶ 46.

---

[1] Brill alleges that, despite his direct requests to TMCC, TMCC has not provided him with any documents that explain the relationship between TMCC and Pfeifer after the original lease expired, and TMCC has not explained its contention that Brill continued to be responsible on the extended lease.

Notwithstanding Brill's information, TMCC continued to contend that Brill is responsible on the lease, and Trans Union continued to report that Brill had a 36-month account with TMCC that was in default almost five years after the account was opened. According to Brill, Trans Union did nothing more than ask Toyota to respond to an automated consumer dispute verification (CDV). Brill contends that this constitutes an inadequate means of investigating an identity theft.[2]  In addition, Trans Union falsely reported that Toyota charged off $8,795 as Brill's bad debt and "resolved the customer dispute." *Id.* at ¶¶ 68-69.

OPINION

**I. Legal Standard**

A Rule 12(b)(6) motion "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). In deciding a motion under Rule 12(b)(6), the court views the complaint in the light most favorable to the non-movant, accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the non-movant's favor. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

A claim survives a Rule 12(b)(6) challenge when it "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2] Brill states in his response brief that he is assuming for purposes of the motion to dismiss that Trans Union initiated an automated CDV even though there is no evidence in the current record that Trans Union actually did this. Dkt. 19 at n.1.

3

inference that the defendant is liable for the misconduct alleged." *Id.* This means that "the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

## II. Discussion

The Fair Credit Reporting Act (FCRA) requires credit reporting agencies to conduct a "reasonable reinvestigation" of information in a credit report when a consumer disputes the accuracy of that information. 15 U.S.C. § 1681i(a)(1)(A). The Act does not define what constitutes a reasonable reinvestigation. *Jianqing Wu v. Trans Union*, 2006 WL 4729755, at *8 (D. Md. May 2, 2006). However, the Court of Appeals for the Seventh Circuit has explained that "a credit reporting agency may be required, in certain circumstances, to verify the source of its initial information." *Henson v. CSC Credit Services*, 29 F.3d 280, 287 (7th Cir. 1994). Whether the credit reporting agency has such a duty depends on two factors: (1) "whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable;" and (2) "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Id.* See also *Bagby v. Experian Info. Solutions, Inc.*, 162 F. App'x 600, 606 (7th Cir. 2006) (applying same standard).

Brill contends that Trans Union inaccurately reported that he had a delinquent debt with TMCC. Although Brill acknowledges that he was a co-owner on the account between 2009 and 2012, it was *after* this that lease term was extended for one year in 2013 and the car was not returned after the lease term expired. Brill alleges his purported signature on the lease extension

4

is a forgery, that he did not agree to extend the term, and that he did not even know that the term had been extended. According to Brill, Trans Union is at fault here because even after he notified Trans Union that he was the victim of identity theft and provided Trans Union with a handwriting analysis,[3] Trans Union did not conduct a proper reinvestigation and failed to correct the inaccurate information. According to Brill, his report to Trans Union alerted Trans Union to the likelihood that a reasonable reinvestigation as required by law would require more than an automated consumer dispute verification and the information that Trans Union had received from Toyota was not reliable. In fact, asserts Brill, the information and documents that he provided to Trans Union proved that he had no debt to Toyota. *See* amended complaint, dkt. 12, at ¶¶ 38-41.

Trans Union responds that, notwithstanding Brill's assertions, Brill is not entitled to relief as a matter of law because the factual inaccuracy that Brill alleges cannot be resolved through a reasonable investigation by a credit reporting agency. As Trans Union notes, federal courts consistently hold that the FCRA does not impose a duty on credit reporting agencies to verify the validity of the underlying debt when conducting reinvestigations. *See, e.g., Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010) (duty to reinvestigate not triggered where plaintiff claimed she not legally obligated to pay her medical bills until her insurer had been billed; "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts"); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (allegedly forged mortgage underlying plaintiff's debt "not a factual inaccuracy

---

[3] Brill's amended complaint does not describe the exact contents of the documents that he provided to Trans Union but it appears that he provided the agency with samples of his true signature to compare to the lease document.

that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA."); *Bagby v. Experian Info. Sols., Inc.*, 162 F. App'x 600, 607 (7th Cir. 2006) (although plaintiff alleged delinquent accounts were opened by her mother without her consent, agency had no duty to investigate beyond CDV inquiry).

In such cases, courts have found that the proper target of the plaintiff's claim is the creditor, which is in a much better position to determine the authenticity of its own records. *See Carvalho*, 629 F.3d at 892 ("We agree that reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts")[4]; *Williams v. Colonial Bank*, 826 F. Supp. 415, 418 (M.D. Ala. 1993) *aff'd*, 29 F.3d 641 (11th Cir. 1994) ("A credit reporting agency has no duty, as a part of its reinvestigation, to go behind public records to check for accuracy or completeness when a consumer is essentially collaterally attacking the underlying credit information."); *cf. Saunders v. Branch Banking and Trust Co. Of Virginia*, 526 F.3d 142, 150 (4th Cir. 2008) (in lawsuit against a "furnisher," court notes in dicta that claims against CRAs based on a legal dispute of an underlying debt raise concerns about collateral attacks because the creditor is not a party to the suit).

At least two federal appellate courts have noted that the "decisive inquiry" in determining whether a duty to reinvestigate arises under § 1681i is whether the credit reporting agency

---

[4] The court in *Carvalho* cites to its own precedent in which it notes that "the 'reasonable' qualifier attached to a CRA's duty to reinvestigate limits its obligations on account of its third-party status and the fact that it is repeating a task already completed once." *Gorman v. Wolpoff & Abramson, LLP* 584 F.3d 1147, 1157 (9th Cir. 2009). "Indeed, as the statute recognizes, the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation. With respect to the accuracy of disputed information the CRA is a third party, lacking any direct relationship with the consumer . . . ." *Id.* at 1156.

"could have" uncovered the inaccuracy if it had "reasonably reinvestigated the matter." *DeAndrade*, 523 F.3d at 68; *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997). *See also Cornock v. Trans Union LLC*, 638 F. Supp. 2d 158, 165 (D.N.H. 2009) ("The nature of the inquiry, then, is predictive, not retrospective; it asks what could have happened if the defendant had conducted a reasonable reinvestigation, not what did happen as a result of whatever reinvestigation the defendant actually performed.").

Although Brill concedes that "credit agencies may not be required to analyze hand writing in every case of a claimed forgery," he contends that *his* case is different because of the "specific information" that Brill provided to Trans Union that triggered a statutory duty "to take reasonable steps to determine the issue of forgery or identity theft to which Brill had alerted Trans Union." Amended Complaint, dkt. 12, at ¶ 47.

Brill suggests in his brief that Trans Union easily could have discovered the forgery by comparing the 2013 lease extension with his handwriting samples. First, as the parties discuss, the Seventh Circuit has noted in dicta that requiring a credit reporting agency to hire a handwriting expert to verify the accuracy of accounts would be "quite costly and unnecessary." *Bagby*, 162 Fed. App'x at 607.

Second, and more importantly at the rule 12(b)(6) dismissal stage, whether Brill's signature on the 2013 lease extension is a forgery is a legal question that Trans Union could not resolve through reinvestigation. As the Court of Appeals for the Ninth Circuit observed in *Carvalho*,

> The fundamental flaw in Carvalho's conception of the reinvestigation duty is that credit reporting agencies are not tribunals. They simply collect and report information furnished by others. Because CRAs are ill equipped to adjudicate contract

disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims.

629 F.3d at 891.[5]

In this case, even if Trans Union were to have performed its own handwriting analysis and decided that *it* believed Brill's explanation, Trans Union had no authority to cancel TMCC's lease or otherwise to relieve Brill of his obligation to TMCC. That was the prerogative of TMCC or a court. *Carvalho* 629 F.3d at 892 (determining whether consumer has valid defense to debt claim is question for court to resolve); *DeAndrade*, 523 F.3d at 68 (determining the validity of mortgage now challenged by consumer in his FCRA lawsuit against the CRA "turns on questions that can only be resolved by a court of law" and is "a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA."). Therefore, unless and until a proper tribunal concluded that Brill's signature was a forgery, Trans Union was accurately reporting that the TMCC debt was Brill's. *See DeAndrade*, 523 F.3d at 67 ("[W]ithout a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail."); *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (without evidence that the defendant "disclosed incorrect information," the plaintiff cannot prove a violation of the FCRA's reinvestigation requirement).

---

[5] It is worth noting is that, notwithstanding Brill's unflagging insistence that even lay people can accurately identify forged signatures, courts remain skeptical whether even trained experts can draw reliable conclusions from handwriting comparisons. *See, e.g., U.S. v. Johnsted*, 12-cr-146-wmc (W.D. Wis.) in which the court granted defendant's *Daubert* motion to strike the testimony of the government's handwriting experts, noting that the entire field of handwriting analysis rests on a shaky foundation that relies on inadequately tested principles. Oct. 8, 2013 order, dkt. 41. In the instant order addressing a 12(b)(6) motion, this court cannot and will not rely on or find facts outside the allegations in Brill's amended complaint. The point is that, as a legal matter, just because Brill characterizes handwriting examination as a "reasonable" step for a CRA to take during reinvestigation doesn't make it so.

Brill cites a few cases involving identity theft to support his argument that Trans Union had a duty to look beyond TMCC's responses to a simple CDV form confirming that Brill had an outstanding debt. *Cushman*, 115 F.3d at 226; *Stevenson v. TRW Inc.*, 987 F.2d 288, 291 (5th Cir. 1993); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1232 (D.N.M. 2006). However, these cases are distinguishable from Brill's situation.

The court in *Cushman* determined that the CDVs sent by the credit reporting agency did not constitute a "reasonable" reinvestigation because the creditors had no way of knowing from the brief information on the forms that the plaintiffs may have been victims of identity theft. *Cushman*, 115 F.3d at 226 ("[A]fter [credit reporting agency] alerted to the accusation that the accounts were obtained fraudulently, and then confronted with the credit grantors' reiteration of the inaccurate information, [the agency] should have known that the credit grantors were 'unreliable' to the extent that they had not been informed of the fraud."). In this case, however, Brill specifically alleges that he told TMCC as well as Trans Union that the signature on the 2013 lease extension was forged, and Brill fails to allege any other facts from which the court could infer that TMCC was an unreliable source.

In *Stevenson*, 987 F.2d at 293, the issue was whether TRW "promptly deleted" plaintiff's credit information after learning from returned CDVs that the information was unverifiable and inaccurate. Here, TMCC never reported that the debt was inaccurate, even after Brill directly supplied TMCC with what he considered to be evidence of the forgery. Finally, in *Apodaca*, the credit reporting agency's computer mistakenly identified two consumers as the same person, resulting in the CRA mingling their credit information. 417 F. Supp. 2d at 1224. The court determined that if the credit reporting agency had forwarded copies of all the information

9

supplied by the plaintiff to a competent investigator instead of simply reducing that information to a three-digit code on its standardized CDV form, it could have corrected the situation more promptly without significant additional costs. *Id.* at 1232.

In each of these cases, the credit reporting agency had the means to correct the inaccuracies at issue by providing more complete information to the creditor or by acting more quickly. In Brill's case, Trans Union did not have a duty to reinvestigate because it did not have the authority to determine whether the credit agreement was valid or the signature was a forgery. Accordingly, Brill can not state a claim against Trans Union for failing to conduct a reasonable reinvestigation under § 1681i.

All of this being so, Brill's amended complaint paints a woeful picture of a man who can't buy a break. He's in a personal relationship with Pfeifer that seems strong enough to bear the weight of a joint car lease. But things don't work out and they split up; even so, Brill lets Pfeifer keep the car. What's his reward? According to Brill, Pfeifer forges his signature on the lease renewal, then takes off with the car. Then, rubbing salt in the wound, TMCC reports that Brill is Pfeifer's co-deadbeat. Brill denies any participation in the swindle and tries to persuade TMCC–and Trans Union–to recognize what he views as obvious differences between his real signature and the fake, but nobody will cut him any slack. From Brill's perspective, this would include this court, which is dismissing his lawsuit against Trans Union. It's not that the court lacks sympathy or empathy for Brill's situation, but the avenues of relief available to Brill do not include an FCRA claim against Trans Union. The FCRA does not provide a basis to hold Trans Union liable for continuing to report TMCC's determinations regarding Brill and the lease extension. The FCRA's reasonable reinvestigation requirement does not impose a legal duty on

Trans Union to consider Brill's handwriting evidence and make its own determination that TMCC's report was inaccurate.

## ORDER

IT IS ORDERED that defendant Trans Union LLC's motion to dismiss, dkt. 13, is GRANTED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 16th day of December, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge